IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| BRIAN DAVID GAMBLE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-1741 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | Magistrate Judge Maureen P. Kelly |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | Re: ECF Nos. 9, 11 |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

## I. INTRODUCTION

Plaintiff Brian David Gamble ("Gamble") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 9, 11). For the reasons that follow, it is respectfully recommended that the Commissioner's motion for summary judgment (ECF No. 11) be denied, and that Gamble's motion for summary judgment (ECF No. 9) be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings.

## II. PROCEDURAL HISTORY

Gamble protectively applied for SSI benefits on December 22, 2009, alleging that he had become "disabled" on December 22, 2005. (R. at 40, 98). Pennsylvania's Bureau of Disability

Determination ("Bureau") denied the application on May 20, 2010. (R. at 53). Gamble responded on June 15, 2010, by filing a timely request for an administrative hearing. (R. at 58). On June 9, 2011, a hearing was held before Administrative Law Judge ("ALJ") William J. Bezego. (R. at 37). Gamble, who was represented by counsel, appeared and testified at the hearing. (R. at 12-28). Frances N. Kinley ("Kinley"), an impartial vocational expert, also testified at the hearing. (R. at 28-33). In a decision dated June 20, 2011, the ALJ determined that Gamble was not "disabled" within the meaning of the Act. (R. at 37-49).

On July 6, 2011, Gamble sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 7). The Appeals Council denied the request for review on October 12, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. (R. at 1). Gamble commenced this action on November 29, 2012, seeking judicial review of the Commissioner's decision. (ECF Nos. 1-3). Gamble and the Commissioner filed motions for summary judgment[1] on March 27, 2013, and April 26, 2013, respectively. (ECF Nos. 9, 11). These motions are now ripe for consideration.

### III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. Schaudeck v. Commissioner of Social Security Administration, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d

---

[1] Gamble alternatively refers to his motion for summary judgment as a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 10 at 1). A court presented with a motion for judgment on the pleadings must assume the truth of the plaintiff's allegations. Zion v. Nassan, 283 F.R.D. 247, 254 (W.D. Pa. 2012). The statute authorizing judicial review of the Commissioner's decision provides a reviewing court with the power to enter a judgment "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g). Since the "transcript of the record" can be considered along with "the pleadings," the motion is more properly regarded as a motion for summary judgment. Nonetheless, the Court acknowledges that judicial review under the Act is not governed by the standards applicable under Federal Rule of Civil Procedure 56. Flores v. Heckler, 755 F.2d 401, 403 (5th Cir. 1985). Given that Gamble's motion does not fit squarely within Rule 12(c) or Rule 56, its procedural characterization is inconsequential.

43, 46 (3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-1191 (3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently."  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

3

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. Stewart v. Secretary of Health, Education & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. Weir on Behalf of Weir v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. McCrea v. Commissioner of Social Security, 370 F.3d 357, 360-361 (3d Cir. 2004).

4

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

Chenery Corp., 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. Fargnoli v. Massanari, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. Cefalu v. Barnhart, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

## IV. THE DECISION OF THE ALJ

In the case at issue, the ALJ determined that Gamble had not engaged in substantial gainful activity subsequent to his application date. (R. at 42). The ALJ found Gamble to be suffering from a major depressive disorder, an anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), a seizure disorder, and a mild traumatic brain injury. (R. at 42-43). Although Gamble's mild traumatic brain injury was deemed to be "non-severe,"[2] his remaining impairments were deemed to be "severe" under the Commissioner's regulations. (R. at 42); 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Gamble's impairments did not

---

[2] An impairment must satisfy the Act's twelve-month durational requirement in order to be "severe." 20 C.F.R. §§ 404.1522, 416.922. The ALJ concluded that Gamble's mild traumatic brain injury had not resulted in functional limitations persisting for twelve consecutive months. (R. at 42).

meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 43-44).

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Gamble's "residual functional capacity"[3] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he would be limited to jobs requiring the performance of only routine, repetitive tasks, with only occasional interaction with the public, co-workers and supervisors. He should not work at heights, around dangerous machinery, or around other similar workplace hazards.

(R. at 44). Although Gamble had previously worked as a dishwasher, the ALJ concluded that such work activity did not constitute "past relevant work."[4] (R. at 29). Therefore, the ALJ's finding at the fourth step of the sequential evaluation process was favorable to Gamble. (R. at 48).

Gamble was born on October 20, 1987, making him twenty-two years old on his application date and twenty-three years old on the date of the ALJ's decision. (R. at 48, 91, 98). He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c). He had a "limited education" and an ability to communicate in English. (R. at 12-13, 48, 113); 20 C.F.R. § 416.964(b)(3), (5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Gamble could work as an industrial cleaner, a cleaner/housekeeper, or a laundry worker. (R. at 48). Kinley's testimony established that

---

[3] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Hartranft v. Apfel, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[4] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

6

those jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[5] (R. at 30).

V. DISCUSSION

The Commissioner's regulations permit a claimant to present "new and material evidence" to the Appeals Council in support of a request for review. 20 C.F.R. § 416.1470(b). The Appeals Council must consider such evidence in deciding whether to review the decision denying the claimant's application for benefits. Id. In connection with his request for review, Gamble presented the Appeals Council with exhibits that had never been submitted to the ALJ. (R. at 4, 326-553). The Appeals Council ultimately concluded that the additional evidence presented by Gamble provided no basis for disturbing the ALJ's factual findings. (R. at 2).

The Act authorizes judicial review only over a "final decision" of the Commissioner. Califano v. Sanders, 430 U.S. 99, 108, 97 S. Ct. 980, 51 L.Ed.2d 192 (1977); Bacon v. Sullivan, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). A federal court has no jurisdiction to entertain a challenge to a decision by the Appeals Council denying a claimant's request for review. Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001). When the Appeals Council denied Gamble's request for review, the ALJ's decision became the Commissioner's "final decision" in this case. Sims v. Apfel, 530 U.S. 103, 106-107, 120 S. Ct. 2080, 147 L.Ed.2d 80 (2000). The sixth sentence of § 405(g) provides that a reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The standards

---

[5] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." Boone v. Barnhart, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).

7

governing the propriety of a sentence-six remand are firmly established. Szubak v. Secretary of Health & Humans Services, 745 F.2d 831, 833 (3d Cir. 1984). Gamble does not move for a remand based on the additional exhibits submitted to the Appeals Council. (ECF No. 10). Since Gamble is not seeking a sentence-six remand, the Court's review is limited to the evidence that was before the ALJ at the time of his decision.[6] Chandler v. Commissioner of Social Security, 667 F.3d 356, 360 (3d Cir. 2011).

Although Gamble received inpatient psychiatric treatment as a minor, he was never hospitalized during the period of time at issue in this case. (R. at 17, 244-308). During his school years, Gamble was enrolled in special education classes. (R. at 12-13). He apparently quit high school shortly after completing the eleventh grade. (R. at 12, 115). As a young adult, he worked as a dishwasher for three different restaurants.[7] (R. at 13-14, 24-25). Gamble was evidently discharged from each of those jobs for engaging in conduct that he would later attribute to anxiety and panic attacks. (R. at 24-26). He testified that he had applied for ten different jobs during the year immediately preceding the administrative hearing, but that nobody had offered him a job. (R. at 26). Gamble stated that he was living with his fiancé and her three children, the youngest of whom was his own child. (R. at 20, 23). He explained that his fiancé was receiving SSI benefits because of bipolar disorder and depression. (R. at 20).

On October 24, 2009, Gamble went to the emergency room of the Heritage Valley Health System, claiming that he had been hit in the head with a pry bar two days earlier. (R. at 212).

---

[6] Gamble's brief contains citations to pages 539-541 of the administrative record. (ECF No. 10 at 6). Those pages are contained in Exhibit 16F, which was among the additional exhibits submitted to the Appeals Council in support of Gamble's request for review. (R. at 4, 539-541). Since the documentary evidence cited by Gamble was never presented to the ALJ, it cannot be considered for the purpose of determining whether his decision denying Gamble's application for benefits is supported by substantial evidence. Chandler v. Commissioner of Social Security, 667 F.3d 356, 360 (3d Cir. 2011).

[7] Gamble testified that he had worked at McDonald's, TGI Friday's and Texas Roadhouse restaurants. (R. at 24-25).

8

He complained of a headache and pain in the left side of his neck. (R. at 212). A computed tomography ("CT") scan of his brain uncovered no evidence of an acute intracranial abnormality. (R. at 209). An x-ray of Gamble's cervical spine yielded normal results. (R. at 211-212). Dr. Edwin H. Page, Jr., suspected that Gamble was suffering from a concussion or a "mild traumatic brain injury." (R. at 213). Gamble was instructed to apply ice to his head and neck and take 600 milligrams of Ibuprofen three times per day. (R. at 213). He was also provided with a "Vicodin prescription for severe pain." (R. at 213).

At the hearing before the ALJ, Gamble testified that he had previously experienced seizures. (R. at 18-19). When asked about the frequency of his seizures, he stated that he had not suffered a seizure during the previous two and a half years. (R. at 18). Gamble asserted that he could not take his seizure medication because it would counteract his other medications and increase his anxiety. (R. at 18). The ALJ accommodated Gamble's seizure disorder by restricting him to a range of work that did not involve exposure to heights, dangerous machinery or other workplace hazards. (R. at 42, 44).

On May 11, 2010, Tod R. Marion, Ph.D., performed a consultative psychological evaluation of Gamble in connection with his application for SSI benefits. (R. at 147-151). Dr. Marion diagnosed Gamble with major depressive disorder, a "[l]ow average range of intellectual function with some evidence of learning problems," migraine headaches, and an inability to read and write. (R. at 148). It was noted that Gamble had an unstable living situation. (R. at 148). After completing the evaluation, Dr. Marion reported that Gamble had "marked" limitations in his abilities to understand, remember and carry out detailed instructions, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. (R. at 149). Dr. Marion indicated that Gamble was "moderately" limited in his abilities

9

to make judgments concerning simple work-related decisions and interact appropriately with supervisors, co-workers, and members of the general public. (R. at 149). Gamble's abilities to understand, remember and carry out short, simple instructions were deemed to be only "slightly" limited. (R. at 149). Dr. Marion stated that Gamble's prognosis was poor. (R. at 148).

Emanuel Schnepp, Ph.D., a non-examining psychological consultant, opined on May 18, 2010, that Gamble was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." (R. at 180). Commenting on Gamble's functional abilities, Dr. Schnepp made the following observations:

> The claimant can perform simple, routine, repetitive work in a stable environment. He can understand, retain, and follow simple job instructions, i.e., perform one and two-step tasks. He can make simple decisions. His frustration tolerance is low. However, he is self-sufficient. He can sustain an ordinary routine without special supervision. Additionally, he can function in production-oriented jobs requiring little independent decision making. The limitations resulting from the impairment do not preclude the claimant from performing the basic mental demands of competitive work on a sustained basis.

(R. at 179). Dr. Schnepp found that Gamble's subjective complaints were only "partially credible." (R. at 179). Dr. Schnepp described Dr. Marion's examination report as "a snapshot of the claimant's functioning" and "an overestimate of the severity of his limitations." (R. at 179). The Bureau denied Gamble's application for benefits shortly after receiving Dr. Schnepp's report. (R. at 53).

During the relevant period of time, Gamble received mental health treatment at Beaver Falls Primary Health. (R. at 242-243). Terri Sharo ("Sharo"), a treating mental health nurse, reported on May 6, 2011, that Gamble was mentally unable to "engage in full-time competitive employment on a sustained basis." (R. at 241). She indicated that he had serious limitations in several work-related areas. (R. at 239-240). Sharo also asserted that Gamble's mental

10

impairments had lasted (or were expected to last) long enough to satisfy the Act's twelve-month durational requirement. (R. at 241).

Gamble testified that he had no lifting, standing or walking limitations. (R. at 18). That is why no exertional limitations were included within the ALJ's residual functional capacity assessment. (R. at 45). When questioned about his mental impairments, Gamble stated that he would experience anxiety and panic attacks whenever he had to be around a large number of people. (R. at 15). The ALJ addressed that concern by limiting Gamble to a range of work requiring only occasional interaction with supervisors, co-workers, and members of the general public. (R. at 44). Gamble responded in the affirmative when asked whether he had "unusual problems remembering things or concentrating on things." (R. at 21). The ALJ accommodated Gamble's concentration-related difficulties by restricting him to work involving "the performance of only routine, repetitive tasks." (R. at 46).

The arguments advanced by Gamble all relate, in one form or another, to the ALJ's residual functional capacity assessment and corresponding hypothetical question to Kinley. (ECF No. 10 at 8-14). A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony makes reference to all of the claimant's functional limitations. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is not described, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. Ramirez v. Barnhart, 372 F.3d 546, 552-555 (3d Cir. 2004). In this case, every functional limitation ultimately found by the ALJ was conveyed to Kinley at the hearing. (R. at 29-30). Under the present circumstances, Gamble's challenge to the sufficiency of Kinley's testimony is

11

more appropriately regarded as a direct attack on the underlying residual functional capacity assessment. Rutherford v. Barnhart, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

The Commissioner's regulations enumerate factors that must be considered in determining the extent to which a claimant's symptoms affect his or her ability to work. 20 C.F.R. § 416.929(c)(3). Those factors include the claimant's daily activities; the location, duration, frequency and intensity of his or her symptoms; factors that precipitate or aggravate those symptoms; the type, dosage, effectiveness and side effects of prescribed medications; other forms of treatment utilized by the claimant; measures taken by the claimant to alleviate his or her symptoms; and any other factors relevant to ascertaining the functional limitations or restrictions attributable to the claimant's symptoms. 20 C.F.R. § 416.963(c)(3)(i)-(vii). Gamble faults the ALJ for failing to expressly discuss each factor in his decision. (ECF No. 10 at 11-13). Contrary to Gamble's assertion, the Commissioner's regulations "d[id] not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505. Instead, they merely provided a general framework for that analysis. The ALJ was not obliged to provide a "comprehensive explanation" for each and every factual finding in his decision. Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981). It would make little sense to require the ALJ to discuss factors that, under the circumstances of this case, have no direct bearing on Gamble's application for benefits. Johnson v. Commissioner of Social Security, 529 F.3d 198, 203-205 (3d Cir. 2008). The dispositive question is whether the ALJ discounted probative evidence of functional limitations without providing an adequate justification for doing so. Reefer v. Barnhart, 326 F.3d 376, 381-382 (3d Cir. 2003).

Gamble argues that the ALJ erred in failing to incorporate the limitations found by Dr. Marion in his residual functional capacity assessment. (ECF No. 10 at 8-11). As discussed

earlier, Dr. Marion found Gamble to be "markedly" limited in his abilities to understand, remember and carry out detailed instructions, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. (R. at 149). In addition, Sharo indicated that Gamble had serious limitations in those same areas. (R. at 239-240). The ALJ accorded "little weight" to the opinions expressed by Dr. Marion and Sharo. (R. at 46-47). The decision denying Gamble's application for benefits was based primarily on Dr. Schnepp's assessment. (R. at 47). Dr. Schnepp, of course, had reported that Gamble could "perform simple, routine, repetitive work in a stable environment." (R. at 179).

Opinions rendered by treating and examining sources do not bind the Commissioner on the issue of a claimant's residual functional capacity. Brown v. Astrue, 649 F.3d 193, 196, n. 1 (3d Cir. 2011). Every medical opinion, regardless of its source, must be afforded some consideration. Williams v. Sullivan, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992). The probative force of any particular assessment can only be judged in relation to the evidentiary record as a whole. Miller v. Commissioner of Social Security, 172 F.3d 303, 304 (3d Cir. 1999). In the face of conflicting assessments, an administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another." Diaz v. Commissioner of Social Security, 577 F.3d 500, 505 (3d Cir. 2009). In limited circumstances, an opinion rendered by a non-examining consultant may be sufficiently probative to outweigh a contrary opinion voiced by a treating or examining source. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). As a general matter, however, assessments supplied by treating and examining sources are entitled to more weight than assessments provided by non-examining sources. 20 C.F.R. § 416.927(c)(1)-(2); Brownawell v. Commissioner of Social Security, 554 F.3d 352, 357 (3d Cir. 2008).

13

In this case, having rejected the opinions stated by Dr. Marion and Sharo, the ALJ accorded "great weight" to Dr. Schnepp's assessment. (R. at 46-47). Dr. Schnepp opined that the "totality of the evidence" did not support Gamble's subjective complaints. (R. at 179). The ALJ found Dr. Schnepp's "well-reasoned assessment" to be consistent with the "objective medical records." (R. at 47). It is not entirely clear what "objective medical records" were used to buttress Dr. Schnepp's opinion. A mental health professional usually cannot "formulate medical opinions based upon objective findings derived from objective clinical tests." Sheehan v. Metropolitan Life Insurance Co., 368 F.Supp.2d 228, 255 (S.D.N.Y. 2005). "In contrast to some physical impairments, which can be verified or discounted solely by reference to reports of objective medical tests, mental impairments are generally identified on the basis of a psychiatric professional's interactions with an impaired individual." Haisley v. Sedgwick Claims Management Services, Inc., 776 F.Supp.2d 33, 50 (W.D. Pa. 2011).

Assuming *arguendo* that Dr. Schnepp's assessment was sufficiently grounded in the evidentiary record to justify the rejection of the other assessments, it was not fully incorporated within the ALJ's residual functional capacity determination. Dr. Schnepp asserted that Gamble could "understand, retain, and follow *simple* job instructions" and "perform *simple*, routine, repetitive work in a *stable* environment." (R. at 179)(emphasis added). Dr. Marion and Sharo both indicated that Gamble would have difficulty understanding, remembering and carrying out *detailed* instructions. (R. at 149, 240). They also found significant limitations in his ability to respond appropriately to changes in a routine work setting. (R. at 149, 239). In limiting Gamble to the performance of "routine, repetitive tasks" involving only occasional interaction with others, the ALJ did not specifically restrict him to *simple* work-related activities performed in a *stable* work environment. (R. at 29-30, 44). A residual functional capacity determination is not

14

"supported by substantial evidence" if it is based solely on an administrative law judge's "own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Since no treating, examining or non-examining mental health professional found Gamble to be capable of performing the full range of work falling within the ALJ's residual functional capacity assessment, that assessment cannot be sustained.[8] Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986).

The applicable statutory provision provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "An immediate award of benefits is appropriate only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." Ambrosini v. Astrue, 727 F.Supp.2d 414, 432 (W.D. Pa. 2010). That standard is not satisfied in this case.

While it is clear from the record that Gamble had functional limitations extending beyond those acknowledged by the ALJ, it is not clear whether those limitations would preclude the performance of substantial gainful activity. Dr. Marion and Sharo both found Gamble to be incapable of handling the stress and pressure associated with a *usual* work setting. (R. at 149, 239). The testimonial record does not clarify whether accommodations designed to address that concern, such as restrictions precluding production-based work, would eliminate all jobs existing in the national economy. (R. at 31-33). It is conceivable that Gamble's need to work in a "stable

---

[8] Where a claimant fails to establish his or her inability to perform a specific work-related task, an administrative law judge may presume that the claimant can perform that task without procuring an opinion from an "outside medical expert." Chandler v. Commissioner of Social Security, 667 F.3d 356, 362 (3d Cir. 2011). Nonetheless, an administrative law judge may not "employ [his or] her own expertise against that of a physician who presents competent medical evidence." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Since Dr. Marion, Sharo and Dr. Schnepp all agreed that Gamble had functional limitations extending beyond those found by the ALJ, the ALJ's residual functional capacity assessment must be set aside. Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986).

15

environment" could be accommodated by a restriction eliminating jobs involving frequent workplace changes. (R. at 179). The positions identified by Kinley were all "unskilled"[9] jobs. (R. at 30). Dr. Marion, Sharo and Dr. Schnepp recognized that Gamble could understand, remember and carry out short, simple instructions. (R. at 149, 179, 239). A limitation precluding jobs requiring an individual to understand, remember and carry out *detailed* instructions would not necessarily eliminate the jobs referenced in Kinley's testimony. (R. at 32). At the hearing, Gamble testified that he had unsuccessfully applied for ten jobs during the course of the preceding twelve months. (R. at 26). He stated that his applications had rarely resulted in interviews. (R. at 26). In any event, Gamble's entitlement to SSI benefits does not turn on "whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B). He cannot obtain benefits simply by demonstrating that his mental impairments may dissuade prospective employers from hiring him.[10] *Id.* The ALJ observed in his decision that Gamble's pursuit of employment may have been indicative of a belief that he was, in fact, capable of working. (R. at 47-48). Because Gamble's entitlement to benefits turns on unresolved factual issues, the proper remedy in this case is a remand for further proceedings rather than a judicially-ordered award of benefits. Diaz, 577 F.3d at 506-507.

---

[9] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[10] The inquiry required under the Social Security Act does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12111-12117]. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S. Ct. 1597, 143 L.Ed.2d 966 (1999); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007).

## VII. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner's motion for summary judgment (ECF No. 11) be denied, and that Gamble's motion for summary judgment (ECF No. 9) be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's "final decision," and a remand for further proceedings. It is further recommended that the Commissioner's decision be vacated, and that the case be remanded for further consideration of Gamble's application for SSI benefits. The Commissioner should be directed to "reopen and fully develop the record before rendering a ruling" on Gamble's claim. Thomas v. Commissioner of Social Security Administration, 625 F.3d 798, 800 (3d Cir. 2010). The exhibits submitted in support of Gamble's request for review will need to be considered on remand. Reefer, 326 F.3d at 381. After considering that evidence, along with any additional evidence presented by Gamble, the Commissioner should determine whether Gamble has functional limitations extending beyond those found by the ALJ.

In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair his or her ability to challenge this Court's legal conclusions on appeal. Brightwell v. Lehman, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
United States Magistrate Judge

cc:    All counsel of record